Curia, per

Richardson, J.
Did the witnesses to the will of Thomas Reynolds, sign their names in his presence, is. the only question of the case. By our Act of 1789, 5 Sta *255 tutes at Large, p. 106, wills of lands are required, (Sic. to be “ attested and subscribed by three credible witnesses, in the presence of the said devisor. ” And by our act of 1824, 6 Statutes at Large, p. 239, for putting wills of personal property on the same footing, the words are “ and shall be attested and subscribed in the presence of the said testator, or testatrix, by three or more credible witnesses; or else they (the wills) shall be utterly void and of no effect.” The question turns upon the words “ in the presence of.”
Is the subscription of the witnesses, when made out of the reach of the testator’s senses, if the testator still remained in the posture in which he wrote his own name, or in that in which he placed himself while the witnesses were going into an adjoining room, in order to write their names — is such attesting and subscribing, in his presence'? Or is it not in his presence, when it is evident that by sitting on the side of his bed, the testator might have seen the witnesses writing their names 1
Assuredly, were this question between the maker of a deed and those claiming in virtue of its provisions, there would be much reason in requiring the maker to have done all he was able to do, or to suffer for his default.
But in the case of loiils, the testator is passive, and the contest is between his heirs at law, and his legatees under the particular will. The provisions of the Acts are therefore alone to be considered. And it equally follows, that the legatees must exhibit a will strictly lawful, or fail altogether as legatees. So that the burthen of proof is upon them, to present a will in due form of law. The obvious policy, not to say the necessity, of the Act of 1789, and that of 1824, concurs with this view. They were formed to protect men against fraudulent wills. Wills are usually made, as in this case, by dying men, or sick men, who are easily importuned or swayed. The Act, therefore, directs the testator — 1. To sign the will himself, or have it signed at his express direction. 2. That it must be attested by not less than three witnesses, because fraudulent confederates usually conspire in pairs, and can seldom trust with* safety any third person. A third is apt to derange our habit of entire reliance upon some one friend, in preference to all others; and lastly — That the witnesses shall sub *256 scribe their names in the presence of the testator, in order that it may be always within his observation, to the last act that makes it his will, and so prevent a fraudulent will being foisted in its place. Such reasoning upon the preventive policy of the Acts, points out the good sense of construing literally the meaning of the words “ in the presence of the testator,” so as to make them mean, within the observance of his senses : and place the three protections of testators against frauds, upon the same safe footing ; all obvious to plain understandings, through the means of the senses. The testator signs — calls on three persons to subscribe, as witnesses — and they are required to subscribe, and to do so “ in his presence,” which last requisition must mean, nowhere else. The particular case is hard upon the legatees, because there appears to have been no fraud whatever. But we are obliged to take the law as written in the Act. And to prevent frauds in general, they must suffer from the strict enforcement of its wise general provisions against fraudulent wills. If, from the letter of the Act, from its spirit and policy, and from the inconvenience that would follow, we turn to adjudged cases, we shall find the same result. As in Wright vs. Manifold, 1 M. & Selw. 294; or Winchelsea vs. Wauchope, 3 Russ. 441, The witnesses must subscribe their names within the sight of the testator, as he stood, and not as he might or might not stand. See also the cases in 1 M. & Selw. 294; 3 Russ. 441; 2 Bos. & Pul. 54; 3 Cond. Chan. Rep. p. —. And this position appears to be deduced from the adjudged cases, and to be recognised by great commentators — see 4 Kent, 574 ; 1 Pow.. 90 ; 1 Roberts, 128, — that, although the testator need not actually see the witnesses sign the will, yet they must have stood in a position to let him see their subscribing; which means, that they must not withdraw themselves from the continued observance of his senses, although thetestator may, himself, refrain from using such senses. Such discretion is with him, but not for the witnesses to avoid the opportunity of his so doing.
V It was correctly said in the argument, that a blind man may make a will. But, then, he must first be made sensible, through his remaining senses, that the witnesses subscribed in his presence, which may be done by great care. *257 But this illustrates the rule I have laid down, that where the testator can see, he must not be deprived of the opportunity of seeing the subscription, by the conduct of the witnesses. If, in the case of a blind testator, the witnesses were to withdraw their subscription from the observance of those senses by which, only, the testator could perceive their being present and were subscribing, and such a will were held to be good, the case would be analagous to the one before the court. But no such case can be found. I would not say that it is absolutely impossible, (although it is so considered by great writers,) that even a blind and a deaf and dumb man can make a'will. But whenever such a case occurs, the three requisites of all wills must appear: that the testator signed the will, or expressly directed it to be signed for him, that three witnesses attested it in writing, and that the testator had been sensible that they signed their names in his presence. And of these three requisites, if there be any inequality in their importance, the last is the most effectual to prevent the substitution of a fraudulent will in the place of the intended genuine will of the testator, Whifch is the immediate object of our Acts directing the manner of executing last wills and testaments.' A new trial is therefore granted, upon the strict law of the case.
Evans, Butler, and Wardlaw, JJ., concurred.